**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 15-CV-78-JHP** |
| | ) | |
| **RICHARD ELBERT TURLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are (1) Plaintiff United States of America's Sealed Motion for Summary Judgment (Doc. No. 51) and (2) Defendant Richard Turley's Motion for Summary Judgment (Doc. No. 48). After consideration of the briefs, and for the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

On December 26, 1964, the Post Office Department entered into a lease agreement ("Lease") with Commercial Leased Properties, Inc. ("CLP") to lease a facility and property located on the northwest corner of Trudgeon and Fifth Streets in Henryetta, Oklahoma, for use as a post office. (Doc. No. 51-1, Att. 1-B (Lease); Doc. No. 51, Plaintiff's Undisputed Fact No. 1). The Lease specified it was entered into by CLP for itself and "its successors, and designs." (Lease at ¶ 1). The Lease commenced on November 16, 1964, for an initial twenty-year term, with six five-year renewal options, for a total term of fifty years upon exercise of all renewal options. (*Id.* at ¶ 5). At the end of each of the six renewal terms, the Post Office was granted the option to purchase the fee simple title to the leased premises, including the underlying land, at

1

specified prices, provided the Post Office gave the lessor notice of its election to purchase at least one year in advance of the end of the applicable term. (*Id.* at ¶ 16). Pursuant to Paragraph 16 of the Lease, the Post Office had the option to purchase the property on November 15, 2014, at a price of $125,000.00, provided notice was given by November 15, 2013. (*Id.*).

Shortly thereafter, on February 17, 1965, CLP conveyed the Henryetta property to Elbert and Marie Turley by Warranty Deed as joint tenants with right of survivorship, in fee simple and free from all encumbrances except easements, building restrictions, special assessments not yet due, a mortgage, and "Lease between Commercial Leased Properties, Inc. and the United States of America dated 26 December, 1964." (Doc. No. 51-1, Att. 1-C (Warranty Deed)). On the same date, CLP executed an assignment of the Lease to "Elbert Turley and Marie Turley, their executors, administrators and assigns." (Doc. No. 51-1, Att. 1-D (Assignment of Lease)). On December 1, 1966, the Post Office, Elbert Turley, and Marie Turley executed an Amendment to the Lease, which amended paragraphs 4, 5, and 17 of the Lease and stated, "In all other respects, the said lease shall remain the same and is hereby confirmed." (Doc. No. 51-1, Att. 1-E (Amendment to Lease), at ¶ 5).

Following a series of ownership transfers, the Henryetta property came to be owned in its entirety by Defendant Richard Elbert Turley, Marie and Elbert Turley's son. (Doc. No. 51-1, Atts. 1-F, 1-G, 1-H; Doc. No. 51, Plaintiff's Undisputed Fact Nos. 10-12). It is undisputed that Defendant maintains ownership of the Henryetta property and has served as landlord over the Postal Service's tenancy on the property during the relevant time period. (*See* Doc. No. 70, at 3 ("the Postal Service agrees that the Defendant currently has legal title to the property at issue.")). Although the parties dispute whether the Postal Service has fulfilled its obligations under the Lease at various times, the Postal Service has continued as tenant on the Henryetta property

through to the present, and Defendant has not attempted to evict or otherwise pursued any legal rights under the Lease against the Postal Service prior to this lawsuit. (Doc. No. 51-1, Att. 1-I (Renewal Option Notices)).

By letter dated November 7, 2013, the Postal Service, through Sean Ford, Contracting Officer, notified Defendant that the Postal Service was exercising its option to purchase the fee simple title to the Henryetta property for the purchase price of $125,000, as stated in Paragraph 16 of the Lease. (Doc. No. 51-1, Atts. 1-J, 1-K; Doc. No. 51, Plaintiff's Undisputed Fact No. 17). Defendant does not deny receiving this letter on November 8, 2013, which was more than one year prior to the expiration of the final renewal term in the Lease. (Doc. No. 62, at 2). Defendant also does not deny that Sean Ford had the appropriate authority to exercise the option to purchase the property. (Doc. No. 51, Plaintiff's Undisputed Fact No. 17; Doc. No. 62, at 2).

However, both shortly before and shortly after Sean Ford served the letter exercising the purchase option, William McMurry at the Postal Service offered to negotiate a new lease with Defendant regarding the Henryetta property. (Doc. No. 50-8 (emails from William McMurry to Richard Turley, Oct. 2, 2013, & Nov. 18, 2013)). In addition, several months after the Postal Service served Defendant with the letter exercising the option to purchase, a real estate broker with CBRE Incorporated ("CBRE"), Bob Pielsticker, contacted Defendant to discuss negotiations for a lease renewal on behalf of the Postal Service with respect to the Henryetta property. CBRE had contracted with the Postal Service to handle negotiations for certain real estate leases at that time. (*See* Doc. No. 72-2 (email from Jack Griffin to Alex Pires, Jul. 20, 2014) (stating the Henryetta property had been released to CBRE for new lease negotiation "a few months ago")). The Postal Service maintains, however, that CBRE has never been authorized to bind the Postal Service, and all lease negotiations are subject to approval by a

3

Postal Service employee with sufficient authority. (*See* Doc. No. 51, Plaintiff's Undisputed Fact Nos. 18, 20).

Negotiations for a lease renewal continued between Mr. Pielsticker and Defendant or Defendant's representative throughout the spring of 2014, though no lease agreement arising from those discussions was ever signed. (*See* Doc. No. 51, Plaintiff's Undisputed Fact Nos. 22-25). On July 16, 2014, Sean Ford learned about the CBRE negotiations and informed CBRE to cease all negotiations with Defendant. (*Id.*, Plaintiff's Undisputed Fact No. 28). On July 21, 2014, Sean Ford sent a letter to Defendant informing him the Postal Service would no longer be continuing potential lease negotiations and was ready to purchase the property on November 15, 2014, pursuant to the purchase option exercised by the Postal Service on November 7, 2013. (Doc. No. 51-1 (Decl. of Sean Ford), at ¶ 30; Doc. No. 51-1, Att. 1-M (letter from Sean Ford to Richard Turley)).

On July 30, 2014, Defendant's representative, Gary Poelstra, sent a letter to Bob Pielsticker accepting his offer of June 2, 2014, for a five year lease on the property by the Postal Service. (Doc. No. 51-1, Att. 1-N (letter from Gary Poelstra to Bob Pielsticker)). On August 7, 2014, Sean Ford sent a letter to Mr. Poelstra, which notified Mr. Poesltra that the lease proposal "merely outlined a basis for negotiation of a lease agreement and was not an offer," and further explained that the proposal, "by its terms, expired June 6, 2014 and clearly stated that the proposal itself was not contractually binding."). (Doc. No. 51-1, Att. 1-O (Letter from Sean Ford to Gary Poelstra)). The Postal Service attempted to proceed with closing on the Henryetta property in October and November, 2014, but Defendant did not participate in closing or convey title to the property as scheduled by the Postal Service. (Doc. No. 51, Undisputed Fact Nos. 33-38). The Lease expired on November 15, 2014. (*Id.*, Undisputed Fact No. 39).

4

Plaintiff, the United States of America, filed suit on February 25, 2015, and Defendant filed his Answer with counter-claim on April 7, 2015. Plaintiff's Complaint requests specific performance of the contractual purchase option with respect to the Henryetta property. Defendant's counterclaim asserts four causes of action: (1) judgment for holdover rent; (2) judgment for possession of the subject property; (3) judgment for quieting title; and (4) declaratory judgment pursuant to 28 U.S.C. §2201(a) pertaining to Plaintiff's right to purchase and occupancy of the subject property. The parties have now filed cross-motions for summary judgment. (Doc. Nos. 48, 51). The motions are fully briefed and ripe for review.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

# I. Plaintiff's Motion for Summary Judgment

Plaintiff seeks specific performance of the contractual purchase option, which Plaintiff asserts was properly exercised pursuant to the Lease terms. Defendant has no desire to convey the Henryetta property to the Postal Service and raises several objections to the Postal Service's argument that the purchase option was properly exercised.

Where the United States is a party to a contract, federal law governs. *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is well settled that contracts to which the government is a party—and though a lease may concern and convey a property interest it is also very much a contract—are normally governed by federal law, not the law of the state where they are made or performed.") (citing cases). The same is true when the Postal Service is the federal party to the contract. *U.S. Postal Serv. v. Bellevue Post Office, LLC*, 997 F. Supp. 2d 1184, 1188 (W.D. Wash. 2014) ("Interpreting a Postal Service lease requires the Court to apply federal common law.") (citing cases), *aff'd sub nom. United States Postal Serv. v. Ester*, 836 F.3d 1189 (9th Cir. 2016). When specific performance of a contract is sought with respect to purchase of real property, the Court may entertain such relief "because there is nothing else in the world exactly equivalent to conveyance of the particular piece of real estate contracted for." *U.S. Postal Serv. v. Spodek*, 2012 WL 2711483, at *6 (N.D. Ohio June 20, 2012), *report & recommendation adopted*, 2012 WL 2711482 (N.D. Ohio July 9, 2012) (quotation omitted).

Under federal law, specific performance of a contract to purchase land requires proof that: (1) a valid contract exists between the parties; (2) the plaintiff has substantially performed its part of the contract; and (3) plaintiff and defendant are each able to continue performing. *See Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir. 1993). Here, Plaintiff argues each of these requirements is satisfied and specific performance is warranted.

### A.      Did a Valid Contract Exist?

Under federal law, a written contract is governed by "the plain and unambiguous meaning" of the contract. *Arko Exec. Servs., Inc. v. United States*, 553 F.3d 1375, 1379 (Fed. Cir. 2009) (quotation omitted). A contract is unambiguous if it is susceptible to "only one reasonable interpretation." *Goldsmith v. United States*, 42 Fed. Cl. 664, 668 (1999) (citing cases). "The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract." *Arko Exec. Servs., Inc.*, 553 F.3d at 1379 (quotation omitted).

Here, the United States argues the Lease plainly provides the Postal Service an option to purchase the property at the end of the sixth five-year renewal option term for $125,000.000, provided the Postal Service gives the lessor notice of election to purchase at least one year in advance of the term's expiration. The United States further argues the consideration for the option was the lease award, and once the lease was awarded, the purchase option became irrevocable. (*See* Lease at ¶ 16 (granting purchase option "in consideration of the award of this lease contract"). Upon timely exercise of the option, the United States argues a contract to purchase was formed, binding Defendant to convey the property to the Postal Service under the terms of the Lease.

Defendant argues the purchase option is no longer effective for two reasons, which are addressed below.

#### 1.      Transfer of the Lease to Elbert and Marie Turley

First, Defendant argues the Lease terms, including the purchase option, were not binding on CLP's assignees to the Lease, Elbert and Marie Turley. To this end, Defendant argues the Lease bound CLP and its "successors, and designs," which did not include assignees such as the

7

Turleys. Defendant asserts, but fails to explain why, the term "designs" would not include the Turleys. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "designee" or "designate" as "Someone who has been designated to perform some duty or carry out some specific role."). Defendant's further asserts, without support, that a "successor" must refer to a corporate succession by merger or acquisition. *See id.* (defining "successor" as "Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor."). Given the broad legal definitions of "successor" and "design," the Court is unpersuaded that the Lease did not contemplate binding CLP's assignees, Elbert and Marie Turley.

Moreover, documents pertaining to the Lease confirm the Turleys were bound by it. First, the express language of the Warranty Deed that conveyed the property to the Turleys on February 17, 1965, stated the fee simple title to the property was subject to the "Lease between Commercial Leased Properties, Inc. and the United States of America dated 26 December, 1964." (Doc. No. 51-1, Att. 1-C). Defendant fails to address this document. Second, a separate document titled "Assignment of Lease" expressly assigned the Lease to "Elbert and Marie Turley, their executors, administrators, and assigns." (Doc. No. 51-1, Att. 1-D). Defendant also fails to address this document. Third, the Turleys signed an amendment to the Lease on December 1, 1966, which confirmed the Lease in all respects not amended by the amendment. (Doc. No. 51-1, Att. 1-E).[1] Therefore, Defendant cannot legitimately argue the Turleys had no

---

[1] Defendant devotes a portion of his brief in support of his Motion for Summary Judgment to listing out certain "signifiers" indicating the purchase option was a separate and independent part of the lease agreement, which was not transferred to the Turleys. Without delving into each enumerated "signifier," the Court finds Defendant's argument to be defied by the plain language of the amendment to the Lease, which specifically refers to the recorded page number of the Lease on which the purchase option is stated, Page 923-185. (Doc. No. 51-1, Att. 1-E). Despite extensive briefing, Defendant completely ignores this language in the Lease amendment.

knowledge of the Lease or that their title to the Henryetta property was not clearly subject to the terms of the Lease, including the purchase option. Defendant's argument fails.

### 2. Survival of the Purchase Option Following Lease Amendment

Second, Defendant argues the purchase option did not survive the Lease amendment, signed by the Turleys on December 1, 1966. Defendant argues the purchase option was a separate agreement from the Lease itself, and the amendment should have been titled, "Amendment to Lease and Purchase Option (Tax Clause Rider)" if the parties intended to transfer the purchase option with the amendment. However, the Court agrees with the United States that the Lease amendment plainly amended only Paragraphs 4, 5, and 17 of the Lease, not the purchase option contained at Paragraph 16 of the lease. (Doc. No. 51-1, Att. 1-E). Further, the amendment explicitly states, "In all other respects, the said lease shall remain the same and is hereby confirmed." (*Id.* at ¶ 5). This language is unambiguous and indicates the purchase option, as with all other Lease terms not modified by the amendment, remained effective as stated in the Lease. *See Goldsmith*, 42 Fed. Cl. at 668. The amendment's title is neither misleading nor indicative of fraud or negligence, as Defendant alleges.

In further support of his argument that the purchase option was voided by the amendment of December 1, 1966, Defendant points out the word "lease" in Paragraph 5 of the amendment is written in lower case. Defendant argues the use of the word "lease" indicates a reference to the basic lease agreement for the Henryetta property, and not to the entire Lease agreement, including the purchase option. The Court finds this argument to be without merit. Plainly, the amendment document itself refers to each recorded page of the Lease, including the page containing the purchase option (Page 923-185). Defendant ignores this plain language and instead urges the Court to accept a strained, implausible reading of the amendment. The Court

concludes the only reasonable interpretation of the amendment document is that there was no intention to void the purchase option with the amendment of December 1, 1966. Accordingly, the purchase option remains valid.

**B.      Did the Postal Service Substantially Perform Its Part of the Lease?**

An option to sell is a continuing, irrevocable offer which, when supported by a valuable consideration and accepted in accordance with the terms of the agreement, binds the optioner into an enforceable contract. *See Willard v. Tayloe*, 75 U.S. 557 (1869); *Plavec v. Burch*, 310 F.2d 337, 339 (10th Cir. 1962); 1 WILLISTON ON CONTRACTS § 5:18 (4th ed. 2015); RESTATEMENT (SECOND) OF CONTRACTS, §§ 25, 87(1) (1981). To exercise an option validly, "'the [g]overnment must exercise the option in exact accord with the terms of the contract.'" *Arko Exec. Servs., Inc.*, 553 F.3d at 1379 (quoting *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1366 (Fed. Cir. 2000)). "When the optionee decides to exercise its option, it must act unconditionally and according to the terms of the option, and as soon as the acceptance is so made, the optioner becomes bound." 1 WILLISTON ON CONTRACTS § 5:18 (4th ed. 2015).

Here, to exercise the purchase option, the Lease required "that the Government shall give the Lessor notice of election to purchase at least one year in advance of the respective times set out" in Paragraph 16. (Lease at ¶ 16). One of the relevant times set out in Paragraph 16 is the end of the sixth five-year renewal option term, or November 15, 2014. Therefore, to exercise the purchase option in a timely manner, the Government was required to give notice of its exercise by November 15, 2013. The Postal Service provided the required notice to Defendant by letter dated November 7, 2013, and Defendant has admitted he received the letter in advance of November 15, 2013. (*See* Doc. No. 51, Plaintiff's Undisputed Fact No. 17; Doc. No. 62, at 2 ("Defendant does not deny receiving the subject letter on [November 8, 2013].")). Plaintiff

argues its timely exercise of the purchase option was "in exact accord with the terms of the contract" and therefore enforceable. *See Arko Exec. Servs., Inc.*, 553 F.3d at 1379.

Defendant not only disputes that the Postal Service validly exercised the purchase option, but also disputes that the Postal Service validly performed its obligations under the Lease over the fifty-year term. Specifically, Defendant argues the Postal Service (1) wrongfully withheld rent from Defendant in 2007 and 2010 to compensate itself for repairs it made over the landlord's protest, which breached the agreement, and (2) failed to renew the Lease for the final term in 2008, which threw the contract into default. Defendant further argues the Postal Service equivocated in its attempt to exercise the purchase option, because the Postal Service attempted to renegotiate a new lease with Defendant after November 15, 2013. The Court addresses each objection below.

### 1. Withheld Rent in 2007 and 2010

Defendant argues that, in 2007 and 2010, the Postal Service reduced its rental payments to Defendant by several thousand dollars to compensate itself for repairs to equipment involved in mail handling and to wooden dock bumpers damaged during unloading of mail in postal operations. Defendant argues these actions violated the Lease, which provides for rent abatement only if the "building or any part is unfit for the purposes leased." (Lease at ¶ 10(c)). Defendant asserts he objected to the rent reduction, but he nonetheless accepted the reduced rental checks under protest and continued to provide occupancy and services to the Postal Service as a holdover month-to-month tenant. Defendant argues the Lease was terminated under these circumstances.

In response, Plaintiff admits it made rent offsets for repairs and notes that Defendant, a Columbia Law School graduate and licensed attorney, declined to take any legal recourse on his

supposed claim for breach of contract, including suing or evicting the Postal Service.  (*See* Doc. No. 62-13 (Depo. of Richard Elbert Turley), 28:19-29:14).  The Postal Service also notes Defendant accepted the reduced payments and continued to provide services to the Postal Services for seven years after the alleged breaches began.

Based on the undisputed facts, it is clear to the Court that Defendant waived any argument that the Lease terminated as a result of the Postal Service's reduced rent payments. Although Defendant apparently disagreed with the deductions, Defendant never sought legal recourse for the reduced rent payments before this action, more than seven years after receiving the first reduced rent payment in 2007.  Moreover, Defendant continued to provide services to the Postal Service, which reflects he did not consider the Lease terminated.  (*See* Doc. No. 70-1 (Depo. of Richard Elbert Turley), 7:19-22 ("Q: The lease continued to be in effect [after the rent dispute].  A: They continued to occupy the premises and I continued to provide the services I was required to provide."), 32:17-22 ("Q: You have testified that you believe that the Postal Service paid you insufficient rent at various times in 2007 and 2010.  Did you file any documents or written claims with the Postal Service to support those contentions?  A: I did not.").

Defendant's communications in 2013 further confirm Defendant did not consider the lease to be terminated after receiving the reduced rent.  (*See* Doc. No. 62-3, at 4 (email from Richard Turley to Sean Ford, Oct. 9, 2013) (noting, "[a]s the 50-year lease expires in twelve months . . . ." and stating his intention "to apprise all parties of the impending expiration of the lease . . . ."); *id.* at 5 (email from Richard Turley to Amanda Freeman, Mar. 11, 2013) ("With twenty months to go until the expiration of the lease . . . .")).  Defendant's own Answer and Counterclaim (Doc. No. 10) does not even raise a claim for rent offsets or raise the offsets as an affirmative defense.  Defendant has demonstrated no entitlement to sit on his rights for seven

years, in anticipation of a last-minute claim that the Lease is void because of an alleged default. *See, e.g., AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 317 (S.D.N.Y. 1999) ("If the injured party chooses not to terminate the contract, he surrenders his right to terminate later based on that breach."). Defendant completely ignores this issue of waiver in his own briefing. Accordingly, the Court will not entertain Defendant's argument that the Postal Service's withholding of rent terminated the Lease.

### 2.     Lease Renewal in 2009

Second, Defendant argues the Lease was terminated in 2009, because the Postal Service did not accept the final five-year option to renew the Lease by the deadline of August 15, 2009. On this point, Defendant argues the renewal notice for the term beginning November 15, 2009, was sent to an obsolete Post Office Box and returned unclaimed on February 25, 2008. (*See* Doc. No. 62-2 (notice of returned mail)). Defendant denies ever having received a renewal notice for the term beginning November 15, 2009, which he argues resulted in the Lease's termination.

However, the Postal Service argues that Defendant received and cashed rent checks at the supposedly obsolete address until November 2008, which is supported by Postal Service records. (Doc. No. 70-2, ¶ 8 & Ex. B-1 (Lease Payment Schedule Detail for period Sept. 1, 2007, to Aug. 31, 2008) (showing reduced rental payments sent to Defendant at "obsolete" address—PO Box 392, New York, NY—during that period)). Further, with respect to the returned renewal notice, the Postal Service alleges it had to resend the renewal notice via regular mail, because Defendant refused to pick up a certified letter at the Post Office. (*See* Doc. No. 62-2, at 3 (noting on returned renewal notice to "send via regular mail per Lessor he doesn't pick up CM [Certified Mail] – lines are too long in NY.")). The Postal Service asserts it resent the renewal notice via

regular mail on March 17, 2008. (Doc. No. 70-2 (Decl. of Diana Alvarado), ¶¶ 10-11)). In further support of its argument that the "obsolete" address remained valid through most of 2008, the Postal Service points to a change of address notice Defendant sent to the Postal Service in December 2008. (*See* Doc. No. 70-2, ¶ 12 & Ex. B-2) (fax from Richard Turley dated Dec. 19, 2008, notifying Postal Service of new address; email exchange by Postal Service personnel dated Dec. 18-19, 2008, regarding remailing returned check to Defendant's updated address)). Given this evidence, Defendant's argument that the Postal Service knew it was sending the 2009 renewal notice to an obsolete address is both unsupported and contradicted by Postal Service records.[2]

Even if the Court were to credit Defendant's argument that he never received the renewal notice, Defendant's conduct in continuing to accept rent from the Postal Service, providing services on the Henryetta property, and communicating to the Postal Service that the Lease was due to expire in 2014 all indicate that Defendant waived any possible rights he had with respect to the Postal Service's alleged failure to renew. (*See* Doc. No. 70-1 (Depo. of Richard Elbert Turley), 7:19-22; Doc. No. 62-3, at 4 (email from Richard Turley to Sean Ford, Oct. 9, 2013); *id.* at 5 (Email from Richard Turley to Amanda Freeman, Mar. 11, 2013)). Defendant may not sit on his rights for five years without comment, and then pull out the allegedly deficient lease renewal as a "trump card" in an attempt to prevent the Postal Service from exercising the

---

[2] In his Response brief, Defendant argues the Postal Service knew it sent the renewal notice to a defunct and obsolete address, because "for many years" it had been sending the rental checks to the updated address. (Doc. No. 62, at 5). In support, Defendant cites Exhibit 75, which shows a rent payment schedule for the period of August 2005 through November 2014 and lists Defendant's address as PO Box 639, West Farms, NY—i.e., the updated address. (Doc. No. 72-1). However, Exhibit 75 is dated March 7, 2016, and does not show when the updated address was entered into the system. Further, Defendant's assertion is contradicted by Plaintiff's Doc. No. 70-2, Ex. B-2, which indicates a rent check dated November 24, 2008, was returned as undeliverable, and Defendant provided his updated address to the Postal Service on December 19, 2008, for remailing. Accordingly, the Court finds Defendant's evidence to be both unhelpful in determining when the Postal Service obtained Defendant's updated address and contradicted by Plaintiff's evidence.

purchase option.  Defendant makes no attempt in his own briefing to address this issue of waiver.

For these reasons, Defendant's argument fails.

### 3.  Exercise of the Purchase Option

Third, Defendant argues the Postal Service's letter dated November 7, 2013, notifying Defendant of the Postal Service's exercise of the purchase option is ineffective, because the Postal Service and its agent CBRE acted inconsistently in simultaneously attempting to negotiate a new lease for the Henryetta property in 2013 and 2014.  The Postal Service argues such negotiations did not void the purchase option, because the purchase option was a unilateral option and, once exercised, formed a binding contract between the Postal Service and Defendant. Accordingly, any previous or subsequent discussions regarding lease renewal are not sufficient to repudiate the purchase option contract, which became binding upon Defendant's receipt of the purchase option notice on November 8, 2013.  It is undisputed that Sean Ford had the requisite authority to exercise the option to purchase.  (*See* Doc. No. 51-1 (Decl. of Sean Ford), ¶ 2 & Att. 1-A)).

### a)  Lease Offers from Postal Service

First, Defendant argues the purchase option was extinguished by offers from the Postal Service to negotiate a new lease on October 22, 2013, and November 18, 2013, under "well-settled law."  (Doc. No. 62, at 11).  Defendant further argues that under "well settled law," the Postal Service's lease proposal dated November 18, 2013, waived the purchase option, because it demonstrated action that was inconsistent with the prior assertion of a contractual right. However, Defendant fails to point to any law in support of these arguments, and the Court can find none.

The record indicates discussions regarding lease renewal did take place on October 22, 2013, and November 18, 2013, between William McMurry at the Postal Service and Defendant (*see* Doc. No. 50-8 (emails from William McMurry to Richard Turley). While Mr. McMurry's lease offers do appear inconsistent with Sean Ford's separate exercise of the purchase option, such offers are not sufficient to waive the exercise of the purchase option. Once exercised, the purchase option constituted a binding contract. To terminate the contract to purchase, the Postal Service needed to make a "distinct and unequivocal absolute refusal to perform the promise, [which] must be treated and acted upon as such by the party to whom the promise was made." *United States v. Dekonty Corp.*, 922 F.2d 826, 828 (Fed. Cir. 1991) (quoting *Dingley v. Oler*, 117 U.S. 490, 503 (1886)). The Postal Service did not accomplish such an unequivocal renunciation by proposing a new lease after exercising the purchase option, and there is no evidence indicating Defendant treated the subsequent lease offer as a renunciation of the purchase contract. (*See* Doc. No. 50-32 (email from William McMurry to Sean Ford, Nov. 21, 2013) (stating Defendant "refused to discuss the lease with the threat of the Option to Purchase hanging over him.")); *Bowes v. Saks & Co.*, 397 F.2d 113, 118 (7th Cir. 1968) (negotiations did not amount to an anticipatory repudiation of existing contractual obligations).[3]

Defendant attempts to analogize this case to *Beaumont v. Prieto,* 249 U.S. 554 (1919), in support of his argument that the Postal Service's exercise of the purchase option was equivocal. The analogy, however, is inapt. In *Beaumont*, on December 4, 1911, the optionor offered the optionee "an option for three months to buy the property" for the price of 307,000 pesos. *Id.* at

---

[3] Defendant spends a significant portion of his Motion for Summary Judgment analyzing discussions that took place prior to November 7, 2013, in which the Postal Service concluded re-leasing the Henryetta property was more favorable than exercising the purchase option. However, any discussions between the Postal Service and Defendant or among Postal Service personnel prior to November 7, 2013, regarding a decision to re-lease or exercise the purchase option are irrelevant to the determination of whether the Postal Service properly exercised the option.

555.  The optionee responded to that offer with an "offer to purchase said property" for $307,000.00 pesos, "payable the first day of May 1912, or before."  *Id.*  The Supreme Court held the optionee had not accepted the offer because his response "plainly departed from the terms of the offer as to the time of payment and was, as it was expressed to be, a counter offer."  *Id.* at 556.  In contrast, Sean Ford's letter of November 7, 2013, unequivocally stated the Postal Service "hereby exercises the option to purchase" the Henryetta property in accordance with Paragraph 16 of the Lease.  To accept the offer stated in Paragraph 16 of the Lease, the Postal Service only had to give Defendant written notice of its exercise of the Option at least one year in advance of the end of the sixth five-year renewal option term, which the Postal Service did unequivocally.  William McMurry's lease offers were separate and distinct from Sean Ford's exercise of the purchase option.  Therefore, *Beaumont* provides no support to Defendant.

**b)  Lease Negotiations with Bob Pielsticker at CBRE**

Second, Defendant argues the negotiations with Bob Pielsticker demonstrated intent by the Postal Service not to be bound by the exercise of the purchase option on November 7, 2013. Defendant alleges Sean Ford at the Postal Service was not only aware of the negotiations between Defendant and Mr. Pielsticker, but that Mr. Ford exercised the purchase option only for purposes of having a "bargaining chip" in negotiating a more favorable lease agreement for the Henryetta property.  In support, Defendant points to certain internal email exchanges among Postal Service personnel regarding whether to negotiate a new lease with Defendant (*see, e.g.*, Doc. No. 62-12 (internal Postal Service email exchange, Oct. 24, 2013) (discussing need for a "hammer" to deal with Defendant)).

The Court finds Defendant's argument to be unavailing.  First, Sean Ford's subjective intent in exercising the purchase option is irrelevant to the formation of a binding contract.  *See*

*Goltra v. U.S.*, 96 F. Supp. 618, 623 (Ct. Cl. 1951) ("generally, neither mental assent to the promises in the contract nor real or apparent intent that the promises shall be legally binding is essential" to its formation) (citing RESTATEMENT (FIRST) OF CONTRACTS § 20 (1932)).

Second, the 2014 negotiations between Bob Pielsticker and Defendant or Defendant's representative, even if authorized by the Postal Service, did not supersede the timely exercise of the purchase option made by an authorized agent of the Postal Service. Once exercised, the purchase option constituted a binding contract and Defendant was obliged to complete the conveyance of the property, regardless of any subsequent negotiations. To void the exercise of the purchase option, the Postal Service had to repudiate its exercise in an unequivocal manner. This may have been accomplished by signing a new lease agreement with Defendant that plainly extinguished and replaced the Lease but, as the record clearly shows, no new lease terms were agreed to nor a new contract signed. Preliminary negotiations do nothing to amend or supersede an existing contract.

The record shows negotiations for a new lease took place between April 9, 2014, and July 2014, but were never completed, finalized, or signed. (*See* Doc. No. 51-3 (Decl. of Gary Poelstra), ¶¶ 5, 8, 10 & Ex. A). The final proposal from Mr. Pielsticker dated June 2, 2014, clearly stated the Postal Service would not be bound until "all customary approvals" were received and "all related lease documents have been completed and signed by both parties." (Doc. No. 51-3 (Decl. of Gary Poelstra), at ¶ 7 & Ex. C2 (lease proposal, June 2, 2014)). Moreover, the proposal expired by its own terms on June 6, 2014 (*see id.*), and it is undisputed that Defendant did not accept the proposal by that date but rather submitted a counter-offer later on June 2, 2014. (Doc. No. 51-3 (Decl. of Gary Poelstra), at ¶ 7 & Exs. D1-D2). In addition, Sean Ford notified Defendant on July 21, 2014, that the Postal Service would not be continuing

lease negotiations and intended to proceed with its purchase of the Henryetta property pursuant to the purchase option exercised on November 7, 2013. (Doc. No. 51-1 (Decl. of Sean Ford, at ¶ 30 & Att. 1-M). Accordingly, Defendant's purported acceptance of Mr. Pielsticker's last offer on July 30, 2014, had no legal effect, because (1) the offer had expired by its own terms on June 6, 2014, (2) Defendant's agent had submitted a counter-offer to Mr. Pielsticker's last offer with a different proposed annual rent, which terminated Mr. Pielsticker's offer, *see* RESTATEMENT (SECOND) OF CONTRACTS § 59 (1981) (a reply to an offer which alters the terms is not an acceptance but is a counter-offer), and (3) Sean Ford had already notified Defendant on July 21, 2014, that any lease negotiations were being terminated.[4]

Finally, even if a new lease had been agreed upon, finalized, and signed, the terms of Mr. Pielsticker's final proposal indicate it would not have commenced until November 16, 2014, after the original Lease expired. (Doc. No. 51-3, Ex. C2 (lease proposal, June 2, 2014)). Therefore, by its own terms the new lease would not have extinguished the original Lease or affected the purchase option. Mr. Pielsticker's proposal of June 2, 2014, does not refer to the original Lease or indicate it is replacing or invalidating the original Lease. Therefore, the undisputed record demonstrates to the Court that the original Lease and the proposed new lease were intended to stand separately in succession. *See United States Postal Serv. v. Nixon*, 2009 WL 2855712, at *3-4 (W.D.N.C. Sept. 1, 2009) (concluding second lease for post office, which

---

[4] Defendant refers to Exhibit 62 (USPS 003683-3698) as evidence that a meeting of the minds occurred with respect to negotiation of a new lease. (Doc. No. 50-42; *see* Doc. No. 52-1, Defendant's Amended Statement of Undisputed Fact No. 46 ("CBRE presented a Lease Agreement at $8/sf to the Landlord in July, 2014.")). Exhibit 62 is a draft lease agreement that appears to adopt the terms of Defendant's counter-offer of June 2, 2014. However, as Plaintiff points out, this draft lease agreement was circulated internally within the Postal Service on July 16, 2014, as indicated by the cover email at Exhibit 53. Exhibit 53 has a Bates number immediately preceding that of the draft lease—USPS 003682. (Doc. No. 50-33). There is no evidence in the record indicating either Defendant or Defendant's agent received or was aware of this draft lease prior to this litigation. Moreover, any argument that Defendant was aware of this draft lease is contradicted by the July 30, 2014, letter sent by Defendant's agent, Gary Poelstra, to Sean Ford, purporting to accept the terms of Bob Pielsticker's proposal of June 2, 2014. (Doc. No. 51-3), Ex. E). Therefore, the Court disregards this draft lease as evidence that a meeting of the minds occurred.

was executed by landlord and Postal Service during term of first lease, did not negate purchase option contained in first lease, because second lease did not commence until first lease expired). Accordingly, Defendant's argument that Mr. Pielsticker's proposal negated the purchase option in the Lease fails.[5]

Accordingly, the Court concludes the Postal Service substantially performed its part of the Lease and validly exercised the purchase option.

### C.    Are the Parties Each Able to Continue Performing?

The Postal Service states, and Defendant does not dispute, that it is prepared to pay the contractual price for the property of $125,000.00.  (*See* Doc. No. 51, Plaintiff's Undisputed Fact No. 40).  The Postal Service scheduled closings on November 6, 2014, and November 14, 2014, and made closing funds available in escrow prior to the closings, although Defendant did not participate in either closing.  (*See* Doc. No. 51, Plaintiff's Undisputed Fact Nos. 33-38).  It is also undisputed that Defendant remains owner of the Henryetta property and is capable of conveying title to the Postal Service.  Accordingly, the third requisite for an award of specific performance is satisfied.

*** 

After consideration of the record and relevant law, the Court concludes there is no genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law.  Plaintiff properly exercised the purchase option clause of the Lease, which obliges Defendant to sell the Henryetta property to the Postal Service for the contractual price of $125,000.00.  Defendant has offered no evidence to indicate specific performance would result in an injustice.  *See Willard v.*

---

[5] Because the Court concludes no meeting of the minds occurred with respect to negotiation of a new lease with Mr. Pielsticker, the Court need not determine whether CBRE or Mr. Pielsticker had the authority to form a binding contract on behalf of the Postal Service.

*Tayloe*, 75 U.S. 557, 567 (1869) (noting specific performance should be withheld when it is apparent, from a view of all the circumstances of the particular case, that it would produce hardship or injustice). Accordingly, the Court grants summary judgment in Plaintiff's favor.

## II. Defendant's Motion for Summary Judgment

For the reasons explained above, the Court finds Plaintiff is entitled to summary judgment in its favor and specific performance is required. Defendant's arguments for summary judgment in his favor, with the below exception, are addressed above in Part I and denied.

In his Motion for Summary Judgment, Defendant urges the Court to invoke equitable estoppel to find in his favor as a matter of law. Defendant argues the Postal Service waived or abandoned its right to exercise the purchase option by providing lease offers to Defendant both before and after the Postal Service exercised the purchase option on November 7, 2013. Defendant alleges he relied on the lease offers from the Postal Service and CBRE in concluding that the Postal Service did not intend to follow through with the purchase option. In support of his argument that the exercise of the purchase option was merely tactical and not genuine, Defendant points to an internal Postal Service email, in which Sean Ford acknowledges the Postal Service did not decide to purchase the Henryetta property until early 2014. (Doc. No. 50-39 (email from Sean Ford to Diana Alvarado, Aug. 5, 2014)).

While the Court has some sympathy for Defendant's position, the Court is nonetheless convinced that the Postal Service's exercise of the purchase option was both timely and unequivocal, for the reasons explained above in Part I.B.3 of this Opinion and Order. At no time did the Postal Service indicate to Defendant it was unwilling or unable to follow through with the purchase of the Henryetta property. Defendant has not demonstrated that the Postal Service

abandoned the purchase option by proposing a new lease.[6]  Accordingly, the Court declines to invoke equitable estoppel to deny specific performance.

Finally, although Defendant does not specifically brief his counterclaim for holdover rent, the Court concludes Defendant is not entitled to holdover rent for the period of occupancy after November 15, 2014, based on the Court's finding that Plaintiff is entitled to specific performance of the purchase option.   For the same reason, Plaintiff's remaining three counterclaims—(1) judgment for possession of the subject property; (2) judgment for quieting title with costs and attorney's fees; and (3) declaratory judgment pursuant to 28 U.S.C. §2201(a) pertaining to Plaintiff's right to purchase and occupancy of the subject property—are also dismissed.

## CONCLUSION

For the reasons detailed above, the Sealed Motion for Summary Judgment of Plaintiff United States of America (Doc. No. 51) is **GRANTED,** and the Motion for Summary Judgment of Defendant (Doc. No. 48), is **DENIED**.

The Court hereby orders Defendant to complete the closing and transfer all right, title, and interest he has in the property to Plaintiff within 30 days after the filing of this Opinion and Order.   Defendant's counterclaims are **DISMISSED**.

**IT IS SO ORDERED** this 18th day of November, 2016.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[6] Because it is unnecessary to the disposition of this case, the Court will not address Plaintiff's arguments that (1) the United States is immune from any arguments based on fraud or misrepresentation or (2) Defendant failed to exhaust his administrative remedies under the Federal Tort Claims Act.